NO. 22-13963-CC

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff/appellee,*

v.

SHADON DEMETRIC EDWARDS,
*Defendant/appellant.*

On Appeal from the United States District Court
for the Southern District of Florida

INITIAL BRIEF OF THE APPELLANT
SHADON DEMETRIC EDWARDS

MICHAEL CARUSO
Federal Public Defender
LORI BARRIST
Assistant Federal Public Defender
Attorney for Appellant
250 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Telephone No. (561) 833-6288

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

## United States v. Shadon Demetric Edwards
## Case No. 22-13963-CC

Appellant, Shadon Demetric Edwards, files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Barrist, Lori, Assistant Federal Public Defender

Berube, Robert Norman, Assistant Federal Public Defender

Brown, Bruce, Assistant United States Attorney

Caruso, Michael, Federal Public Defender

Croke, Danielle Nicole, Assistant United States Attorney

Ecarius, Daniel, Assistant Federal Public Defender

Edwards, Shadon Demetric, Defendant/Appellant

Fajardo Orshan, Ariana, Former United States Attorney

Gonzalez, Juan Antonio, Former United States Attorney

Hunt, Patrick M., United States Magistrate Judge

Klco, Sara Michele, Assistant United States Attorney

Lapointe, Markensy, United States Attorney

Matzkin, Daniel, Assistant United States Attorney

Moreno, Federico A., United States District Judge

Mulvihill, Thomas G., Assistant United States Attorney

Rubio, Lisa Tobin, Assistant United States Attorney

Seltzer, Barry S., Former United States Magistrate Judge

Singhal, Raag, United States District Judge

Strauss, Jared M., United States Magistrate Judge

United States of America, Plaintiff/Appellee

Valle, Alicia O., United States Magistrate Judge

Weinstein, Michael David, Trial Attorney

*s/Lori Barrist*
Lori Barrist

# STATEMENT REGARDING ORAL ARGUMENT

The defendant respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision making process.

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................................ C-1

Statement Regarding Oral Argument ........................................................i

Table of Citations ......................................................................................v

Statement of Subject Matter and Appellate Jurisdiction .........................1

Statement of the Issues................................................................................2

Statement of the Case .................................................................................4

      Course of Proceedings, Disposition in the District Court,

      and Statement of Facts ....................................................................4

      A.     The Charge.............................................................................4

      B.     The Motion to Suppress Evidence .........................................5

      C.     The Guilty Plea ...................................................................10

      D.     The Presentence Investigation Report (PSI)........................13

      E.     The Sentencing Hearing ......................................................15

      F.     The Notice of Appeal ...........................................................17

      Standards of Review.......................................................................18

Summary of the Arguments.......................................................................20

Arguments and Citations of Authority ....................................................23

Issue I:

Mr. Edwards' guilty plea was not knowingly and voluntarily entered, where he believed that he retained the right to appeal the denial of his motion to suppress, the district court failed to advise him otherwise during the Rule 11 colloquy, and both defense counsel and the district court agreed at the sentencing hearing that he could appeal the ruling, thus requiring that his guilty plea be set aside and his conviction vacated............................................................................................23

Issue II:

The district court erred in imposing a 15-year mandatory minimum term of imprisonment for Mr. Edwards' conviction for possession of a firearm by a convicted felon, where the indictment failed to allege, and the government failed to prove, that Mr. Edwards had three qualifying prior convictions for a violent felony or a serious drug offense, committed on occasions different from one another, pursuant to 18 U.S.C. § 924(e)(1)....................................................36

Issue III:

Mr. Edwards' ACCA sentence violates both his Fifth and Sixth Amendments rights, because the occasions clause of 18 U.S.C. § 924(e)(1) necessitates an examination of the facts surrounding the prior predicate offense, not just "the fact of a prior conviction," requiring that the offenses be charged in the indictment, and that a jury, not a judge, determine the offenses occurred on separate occasions ........................................ 47

Issue IV:

The felon-in-possession statute, 18 U.S.C. § 922(g), both on its face and as applied, is an invalid exercise of Congress' Commerce Clause power because possession of a firearm by a convicted felon is not conduct which has a substantial effect on interstate commerce ................................................................ 54

Conclusion ............................................................................ 59

Certificate of Compliance ..................................................... 60

Certificate of Service ........................................................... 61

# TABLE OF CITATIONS

**CASES:**

*Alleyne v. United States,*

    570 U.S. 99 (2013) ............................................................ 48

*Almendarez-Torres v. United States,*

    523 U.S. 224 (1988) ....................................................... 48-49

*Apprendi v. New Jersey,*

    530 U.S. 460 (2000) ...................................... 22, 48-49, 52

*Blackledge v. Allison,*

    431 U.S. 63 (1977) ............................................................ 23

*Bonner v. City of Prichard,*

    661 F.2d 1206 (11th Cir. 1981) .................................... 25

*Boykin v. Alabama,*

    395 U.S. 238 (1969) ......................................................... 23

*Class v. United States,*

    138 S. Ct. 798 (2018) ..................................................... 24

*Descamps v. United States,*

    570 U.S. 254 (2013) ........................................................ 49

*Henderson v. United States,*

568 U.S. 266 (2013) ........................................................ 46

*Jones v. United States,*

526 U.S. 227 (1999) ........................................................ 48

*\*Jones v. United States,*

529 U.S. 848 (2000) ....................................................57-58

*Mathis v. United States,*

579 U.S. 500 (2016) ....................................................49-50

*McCarthy v. United States,*

394 U.S. 459 (1969) ........................................................ 18

*\*Molina-Martinez v. United States,*

578 U.S. 189 (2016) ........................................................ 46

*\*Rosales-Mireles v. United States,*

138 S. Ct. 1897 (2018) ....................................... 19, 43, 47

*Scarborough v. United States,*

431 U.S. 563 (1977) ........................................................ 57

*Sessions v. Dimaya,*

138 S. Ct. 1204 (2018) .................................................... 48

*Shepard v. United States,*

 544 U.S. 13 (2005) .............................................................39-40, 53

*United States v. Betancouth,*

 554 F.3d 1329 (11th Cir. 2009) .....................................................31

*United States v. Carter,*

 969 F.3d 1239 (11th Cir. 2020) .....................................................42

*United States v. Cotton,*

 535 U.S. 625 (2002) ..............................................................52-53

*United States v. Dominguez Benitez,*

 542 U.S. 74 (2004) ...............................................................34-35

*United States v. Dudley,*

 5 F.4th 1249 (11th Cir. 2021)................................................ *passim*

*\*United States v. Harris,*

 941 F.3d 1048 (11th Cir. 2019) ...............................................37, 45

*United States v. Haymond,*

 139 S. Ct. 224 (1988) ..................................................................48

*United States v. Hernandez,*

 145 F.3d 1433 (11th Cir. 1998) .....................................................37

*United States v. Hernandez-Fraire,

    208 F.3d 945 (11th Cir. 2000) .................................................. 24, 33

United States v. Jones,

    143 F.3d 1417 (11th Cir. 1998) ..................................................... 25

United States v. Jones,

    743 F.3d 826 (11th Cir. 2014) .................................................. 19, 43

United States v. Leon,

    468 U.S. 897 (1984) .................................................................... 7, 10

United States v. Longoria,

    874 F.3d 1278 (11th Cir. 2017) ......................................... 19, 40, 51

*United States v. Lopez,

    514 U.S. 549 (1995) ............................................................ passim

United States v. Lopez-Garcia,

    565 F.3d 1306 (11th Cir. 2009) ..................................................... 45

United States v. McAllister,

    77 F.3d 387 (11th Cir. 1996) .............................................. 22, 56-58

United States v. McCloud,

    818 F.3d 591 (11th Cir. 2016) ............................................ 37, 39-40

*United States v. McCoy*,

    477 F.2d 550 (5th Cir. 1973) ........................................................25

*United States v. Monroe*,

    353 F.3d 1346 (11th Cir. 2003) ....................................25, 32-33, 35

*United States v. Moriarty*,

    429 F.3d 1012 (11th Cir. 2005) ....................................................32

*\*United States v. Morrison*,

    529 U.S. 598 (2000) ...............................................................57-58

*United States v. Olano*,

    507 U.S. 725 (1993) ....................................................................46

*United States v. Patti*,

    337 F.3d 1317 (11th Cir. 2003) ....................................................18

*United States v. Penn*,

    63 F.4th 1305 (11th Cir. 2023) .....................................................52

*\*United States v. Pierre*,

    120 F.3d 1153 (11th Cir. 1997) ..............................................*passim*

*United States v. Ruiz*,

    536 U.S. 622 (2002) ....................................................................24

*United States v. Scott,*

    263 F.3d 1270 (11th Cir. 2001) .................................... 19, 22, 57-58

*United States v. Smith,*

    775 F.3d 1262 (11th Cir. 2014) ................................................. 18, 51

*\*United States v. Sneed,*

    600 F.3d 1326 (11th Cir. 2010) .................................... 37, 39-40, 45

*United States v. Vonn,*

    535 U.S. 55 (2002) .......................................................................... 33

*United States v. Wai-Keung,*

    115 F.3d 874 (11th Cir. 1977) ....................................................... 25

*Wofford v. Wainwright,*

    748 F.2d 1505 (11th Cir. 1984) ..................................................... 31

*\*Wooden v. United States,*

    142 S. Ct. 1063 (2022) ........................................................... *passim*

**STATUTORY AND OTHER AUTHORITY:**

U.S. CONST. amend. IV.............................................................................. 7

U.S. CONST. amend. V ................................................................. *passim*

U.S. CONST. amend VI.................................................................. *passim*

U.S. CONST. art. 1, § 8 .................................................... 3, 22, 54, 56-57

18 U.S.C. § 844(i) ..................................................... 58

18 U.S.C. § 922(g) ............................................... *passim*

18 U.S.C. § 922(g)(1) ......................................... *passim*

18 U.S.C. § 922(q) ............................................... 55-56

18 U.S.C. § 924(a)(2) ................................................ 48

18 U.S.C. § 924(a)(8) ................................................ 48

18 U.S.C. § 924(e) ............................................... *passim*

18 U.S.C. § 924(e)(1) ......................................... *passim*

18 U.S.C. § 924(e)(2)(A)(ii) ....................................... 36

18 U.S.C. § 924(e)(2)(B)(i) ........................................ 36

18 U.S.C. § 3231 ...................................................... 1

18 U.S.C. § 3742 ...................................................... 1

21 U.S.C. § 802 ...................................................... 36

28 U.S.C. § 1291 ...................................................... 1

Fed. R. Crim. P. 11. .......................................... *passim*

Fed. R. Crim. P. 11(a)(2) ................................ 20, 26, 29

Fed. R. Crim. P. 11(b)(1)(A) ...................................... 24

Fed. R. Crim. P. 11(b)(1)(B) ...................................... 24

Fed. R. Crim. P. 11(b)(1)(C) ...................................... 24

Fed. R. Crim. P. 11(b)(1)(D) ................................................24

Fed. R. Crim. P. 11(b)(1)(E) ................................................24

Fed. R. Crim. P. 11(b)(1)(F) ................................................24

Fed. R. Crim. P. 11(b)(1)(G) ...............................................24

Fed. R. Crim. P. 11(b)(1)(H) ...............................................24

Fed. R. Crim. P. 11(b)(1)(I) .................................................24

Fed. R. Crim. P. 11(b)(1)(J) ................................................24

Fed. R. Crim. P. 11(b)(1)(K) ...............................................24

Fed. R. Crim. P. 11(b)(1)(L) ................................................24

Fed. R. Crim. P. 11(b)(1)(M) ..............................................24

Fed. R. Crim. P. 11(b)(1)(N) ...............................................24

U.S.S.G. § 2K2.1(a)(2) .......................................................13

U.S.S.G. § 4B1.4(a) ...........................................................14

U.S.S.G. § 4B1.4(b)(3)(B) ...................................................14

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States. The Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeal jurisdiction over all final decisions and sentences of the district courts of the United States. The original notice of appeal was timely filed on November 9, 2022 (DE 93), from the judgment entered on November 3, 2022. (DE 92). However, the notice indicated that Mr. Edwards was appealing "the denial of the Motion to Suppress on June 14, 2022 [DE 74]." (DE 93).

Also on November 9, 2022, Mr. Edwards' attorney filed a motion to withdraw as counsel, and for the appointment of appellate counsel "to appeal the denial of the Motion to Suppress." (DE 94). On November 22, 2022, the magistrate judge granted the motion to withdraw, and appointed the Federal Public Defender to represent Mr. Edwards. (DE 97). An amended notice of appeal was filed on November 28, 2022 (DE 100), from the judgment entered on November 3, 2022 (DE 92), that disposes of all claims between the parties to this cause.

1

# STATEMENT OF THE ISSUES

<u>Issue I</u> :    Whether Mr. Edwards' guilty plea was knowingly and voluntarily entered, where he believed that he retained the right to appeal the denial of his motion to suppress, the district court failed to advise him otherwise during the Rule 11 colloquy, and both defense counsel and the district could agreed at the sentencing hearing that he could appeal the ruling, requiring that his guilty plea be set aside and his conviction vacated?

<u>Issue II</u> :    Whether the district court erred in imposing a 15-year mandatory minimum term of imprisonment for Mr. Edwards' conviction for possession of a firearm by a convicted felon, where the indictment failed to allege, and the government failed to prove, that Mr. Edwards had three qualifying prior convictions for a violent felony or a serious drug offense, committed on occasions different from one another, pursuant to 18 U.S.C. § 924(e)(1)?

Issue III:  Whether Mr. Edwards' ACCA sentence violates both his Fifth and Sixth Amendment rights, because the occasions clause of 18 U.S.C. § 924(e)(1) necessitates an examination of the facts surrounding the prior predicate offense, not just "the fact of a prior conviction," requiring that the offenses be charged in the indictment, and that a jury, not a judge, determine the offenses occurred on separate occasions?

Issue IV:  Whether the felon-in-possession statute, 18 U.S.C. § 922(g), both on its face and as applied, is an invalid exercise of Congress' Commerce Clause power because possession of a firearm by a convicted felon is not conduct which has a substantial effect on interstate commerce?

**STATEMENT OF THE CASE**

The appellant was the defendant in the district court and will be referred to by name. The appellee, United States of America, will be referred to as the government. The record will be noted by reference to the document number, followed by the page number.

Mr. Edwards is currently incarcerated, serving a 180-month term of imprisonment.

**Course of Proceedings, Disposition in the District Court, and Statement of Facts**

**A.      The Charge**

On December 12, 2019, a federal grand jury in the Southern District of Florida returned a one-count indictment against Shadon Demetric Edwards, charging that on October 25, 2019, he knowingly possessed a firearm and ammunition, in and affecting interstate and foreign commerce, knowing that he had previously been convicted of a felony offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). (DE 1). Mr. Edwards' prior convictions were not listed in the indictment.

The facts underlying Mr. Edwards' arrest are set forth in the motion to suppress evidence, the factual proffer, and the presentence investigation report (PSI). After a two-year investigation of a drug

trafficking organization in Pompano Beach, Florida, involving various wiretaps, search warrants, and GPS (global positioning system) warrants, Broward County Sheriff's Office detectives obtained an arrest warrant for Mr. Edwards and four other individuals, charging them with several cocaine offenses. (DE 57:1-2; DE 59:1; DE 108:5; PSI ¶¶6-7).

On October 25, 2019, officers saw Mr. Edwards driving a white Nissan Quest in Pompano Beach, Florida. They followed it for several blocks until Mr. Edwards parked the car. Officers approached the car, told Mr. Edwards they had a warrant for his arrest, and arrested him. In a search incident to Mr. Edwards' arrest, officers discovered a firearm in his right front pants pocket. (DE 81:1; PSI ¶¶7-8). He was charged in state court with the drug charges, and in federal court with the gun charge. (PSI ¶37). According to the government, Mr. Edwards had at least three prior predicate convictions, and as such, qualified as an armed career criminal, pursuant to 18 U.S.C. § 924(e)(1). (DE 81:2; PSI ¶¶9,38).

## B.    The Motion to Suppress Evidence

Mr. Edwards filed a motion to suppress the firearm based on false statements and misrepresentations contained in the warrant affidavit. (DE 57). He argued that because false statements, misrepresentations,

and other omissions were used to establish probable cause for his arrest, the evidence seized must be suppressed. (DE 57:18). He also argued that the good faith exception did not apply because the affiant either knew the information contained in the warrant was false or would have known that the information was false but for her reckless disregard for the truth. (DE 57:19).

In its response, the government argued that there were actually two warrants – a search warrant for Mr. Edwards' cell phone data and an arrest warrant. (DE 59:2). The government acknowledged that the cell phone data was used to locate and arrest Mr. Edwards. (DE 59:3). Both warrants had affidavits attached, and the government maintained that neither affidavit contained false information. (DE 59:4).

The court held a hearing on the motion. At the beginning of the hearing, the district court stated that in addition to the pleadings, it had reviewed the affidavit and application for the search warrant, DE 57-1, the state court deposition of the affiant, Detective Kristy Frederick, DE 57-2,[1] and the arrest warrant and affidavit, DE 59-1. (DE 108:3-4).

---

[1] The zoom deposition of Detective Kristy Frederick is actually three volumes, and is found at DE 57-2, DE 57-3, and DE 57-4.

Counsel for Mr. Edwards argued that the search warrant for the cell phone was "replete with omissions and misrepresentations with the intent to deceive or with reckless disregard for the truth." (DE 108:7). That warrant was used "for the purpose of tracking down and arresting Mr. Edwards." (DE 108:8). Therefore, he argued, "but for this illegal warrant, Mr. Edwards would not have been located . . . and the gun that was in his possession would not have been found." (DE 108:8).

Defense counsel argued further that "the *Leon* exception[2] for reliance on good faith does not save the warrant here." (DE 108:8). Both parties then agreed with the district court that "if [it] finds there's no problem with the warrant, [it doesn't] even need to get to *Leon.*" (DE 108:9).

Counsel for Mr. Edwards stated that he "would like to" call the affiant, Detective Kristy Frederick, who was in the courtroom. (DE 108:10). But once the district court asked whether there were any issues "relevant to [the] motion" that were not contained in her "three-day"

---

[2] *See United States v. Leon,* 468 U.S. 897, 913, 926 (1984) (holding that the Fourth Amendment's exclusionary rule does not bar evidence obtained by officers acting in good faith reliance upon a search warrant later found to be invalid).

deposition, defense counsel stated that if the court were willing to rely on the deposition, he would "just make closing argument and . . . point out what I think is relevant." (DE 108:11). As a result of the district court's agreement to rely on the state court deposition, no witnesses were called and no additional evidence was introduced. (DE 108:4,9-11).

Defense counsel then argued that the firearm must be suppressed because the false statements and misrepresentations contained in the warrant application vitiated the probable cause finding. As a result, the warrant should not have been issued, and Mr. Edwards should not have been arrested. (DE 108:23).

Specifically, defense counsel identified several of the false statements and provided clarifications: the cell phone did not belong to Mr. Edwards, although he used it on the day of his arrest; there were no conversations "picked up in the taps" where Mr. Edwards was using that cell phone to traffic drugs; no drugs were found in Mr. Edwards' residence during the execution of an earlier search warrant; Mr. Edwards was never "seen with, caught with, or arrested for drugs at any of the five residences" under surveillance; the state court charge for maintaining a residence to traffic drugs was dismissed; Mr. Edwards' criminal history

was misrepresented; and Mr. Edwards had not "changed his appearance." (DE 108:14-20).

The government maintained that there were no intentional misrepresentations in either warrant. The government stated that the reference to Mr. Edwards' purported criminal history in the warrant affidavit was not "wrong" because the notation was to the criminal statute he was charged with, not what he was convicted of; Mr. Edwards did use that cell phone, whether it was registered to him or not; while no drugs were found in Mr. Edwards' residence, they were found in the stash house that he allegedly maintained; and finally, not only was there probable cause to believe that Mr. Edwards was part of a cocaine conspiracy, he was ultimately convicted of it in state court. (DE 108:20-22).

On June 14, 2022, the district court entered a paperless order denying Mr. Edwards' motion to suppress. (DE 74). After "carefully consider[ing] the Motion and attachments and the Response and attachments," as well as the arguments at the March 16, 2022 hearing, the court ruled:

> The primary defense argument is that the statements contained in the search warrant affidavit are insufficient or

fraudulent and therefore do not support probable cause. Additionally, the defense argues, if the main argument fails, the *Leon* good faith exception also does not save the warrant. Here, law enforcement targeted a telephone in order to locate defendant to arrest him. The affidavit described why there was reason to believe defendant was using the specific telephone. Utilizing a pen register trap and trace and evidence gathered from that, law enforcement developed the particular telephone as one belonging to an associate of defendant but used by defendant. Each of these facts were set forth in the affidavit, established probable cause and resulted in the arrest of defendant. None of the arguments raised by the defense reasonably calls this into question. Accordingly, the Motion to Suppress must be denied.

*See* DE 74.

## C.    The Guilty Plea

On July 19, 2022, Mr. Edwards pled guilty to the indictment pursuant to a written plea agreement. (DE 80; DE 105). Mr. Edwards agreed to the facts contained in the written factual proffer, which provided that a gun was found in his right front pants pocket during a search incident to his arrest. (DE 81:1). The gun had been reported stolen. (DE 81:1).

Mr. Edwards agreed that he had prior felony convictions for trafficking in oxycodone, aggravated battery with a deadly weapon, and robbery with a deadly weapon/aggravated battery, and knew that he had previously been convicted of a felony offense. (DE 81:2). Finally, Mr.

Edwards agreed that the firearm and ammunition were manufactured outside the State of Florida, and had, therefore, moved in interstate and foreign commerce before he possessed them. (DE 81:2).

The plea agreement did not contain an appellate waiver. (DE 80). During the plea colloquy, the district court "recognize[d] that we had a motion in the case." (DE 105:8). The district court then asked defense counsel "how you got ready for today." (DE 105:8). Defense counsel responded:

> . . . in anticipation of today's hearing, he and I had a scheduled visit last week where we went over the entire plea agreement and we went over the entire factual proffer together. As the Court noted earlier, we also had a motion to suppress in this case. The facts are rather simple. I mean, he was pulled over and he was arrested and he was in possession of a firearm and he was a convicted felon. It's not a - - this is not factually difficult. It was just whether or not they had the requisite legal rights to effectuate that stop. That was the whole issue. And this Court, unfortunately, ruled against us, but that's the nature of the case.

(DE 105:8-9). Defense counsel explained that he met with Mr. Edwards again before the hearing "just to make sure he didn't have any follow-up questions." He continued:

> And we went over literally everything that is going to happen right now. We went over the PSI. We went over the sentencing date. We went over what's going to happen at sentencing. We

went over what we were going to ask for. We went over everything.

(DE 105:9).

The district court then asked Mr. Edwards whether he was in agreement with "how you and [your lawyer] got ready for today's hearing," and whether Mr. Edwards felt that "everything you wanted to have done on this case has been done." (DE 105:9). After Mr. Edwards responded "yes, sir," the district court reviewed the *trial* rights he was waiving:

> Because by pleading guilty at this stage what you're basically telling me is that you don't want to have a jury trial, that you want to resolve that part, and you want to go onto the sentencing part . . .

(DE 105:10).

The district court then reviewed those *trial* rights: the right to a jury trial, the right to be presumed innocent, the right to force the government to establish his guilt beyond a reasonable doubt, the right to cross-examine the witnesses, the right "to put on a case," and the right to testify or to remain silent. (DE 105:10-12). There was a discussion about the loss of the rights to possess a firearm, to vote, to hold public office, or

to be a juror. (DE 105:12). The district court also explained the possible immigration consequences. (DE 105:12-13).

Finally, there was a discussion about the forfeiture of the gun and ammunition. (DE 105:14). However, there was *no* discussion about the forfeiture of the right to appeal the denial of the motion to suppress evidence.

After reviewing the plea agreement and factual proffer, the district court made the following findings of fact:

> I do find that Mr. Shadon Demetric Edwards appears in court today. He's very polite, alert, intelligent. He understands the nature of the charge and the consequences of the plea. He is very well represented by an excellent criminal defense lawyer with whom he says he is satisfied who's done a very nice job for his client.

> I find that the plea is being entered into freely and voluntarily with a knowing, intelligent waiver of Mr. Edwards' rights. It is predicated upon the excellent advice of competent counsel and sufficient facts as set forth in the factual proffer for change of plea, which will become a part of this record.

(DE 105:18).

## D. The Presentence Investigation Report (PSI)

A presentence report was prepared. Pursuant to § 2K2.1(a)(2) of the United States Sentencing Guidelines (U.S.S.G.), because Mr. Edwards possessed a gun "subsequent to sustaining at least two felony convictions

for either a crime of violence or a controlled substance offense," Mr. Edwards' base offense level was 24. (PSI ¶14). Two levels were added because the firearm was stolen. (PSI ¶15). This resulted in an adjusted offense level of 26. (PSI ¶19).

However, pursuant to U.S.S.G. §§ 4B1.4(a) and 4B1.4(b)(3)(B), the probation officer increased Mr. Edwards' offense level to 33, based on his classification as an "armed career criminal." (PSI ¶20).[3] According to PSI ¶9, Mr. Edwards' convictions for trafficking in oxycodone, aggravated battery with a deadly weapon, and robbery with a deadly weapon subjected him to an enhanced sentence under 18 U.S.C. § 924(e)(1).[4]

The record establishes only that Mr. Edwards was convicted of robbery with a deadly weapon and aggravated battery in the first case; trafficking in oxycodone and possession with intent to distribute cocaine

---

[3] U.S.S.G. § 4B1.4(a) defines an armed career criminal as a defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e).

[4] Under § 924(e)(1), a defendant faces a 15-year mandatory minimum sentence of imprisonment if the instant offense is a violation of 18 U.S.C. § 922(g) and he has at least three prior convictions for a violent felony or a serious drug offense, or both, committed on occasions different from one another. *See* 18 U.S.C. § 924(e)(1).

in the second case; and aggravated battery with a deadly weapon in the third case. (PSI ¶¶26, 34, 35). No "circumstances" were provided as to the arrest for the drug conviction set forth in PSI ¶34. According to the PSI, "[t]he circumstances of this arrest were requested from the Broward County Clerk of Court and are pending receipt." *See* PSI ¶34.

With a three-level reduction for pleading guilty, Mr. Edwards' total offense level was 30. (PSI ¶23). Mr. Edwards' criminal history category was VI, resulting in an advisory guidelines range of 168 to 210 months' imprisonment with a statutory mandatory minimum 180-month sentence. (PSI ¶¶38, 83-84).

## E.    The Sentencing Hearing

At the sentencing hearing, the district court noted that in deciding what would be an appropriate sentence, "our hands are somewhat tied on this one" because of the required mandatory minimum sentence. (DE 106:14-15). The government agreed that "the mandatory minimum is an adequate sentence." (DE 106:15). Mr. Edwards argued that the sentencing guidelines actually call for a sentence of less than 15 years for his offense as set forth in PSI ¶84, and requested a sentence of no more than the mandatory minimum term. He also asked that the

sentence be imposed to run concurrently with the state case,[5] for which "the notice of appeal has already been filed." (DE 106:15-18).

The court thereupon imposed a sentence of 180 months' imprisonment followed by a two-year term of supervised release. (DE 92; DE 106:19). The term of imprisonment was ordered to run concurrently with the underlying state court case. (DE 92; DE 106:23).

Next, the court advised Mr. Edwards that he had the right to appeal the sentence imposed, and that the notice of appeal must be filed within 14 days of the judgment. (DE 106:23). The following colloquy was then held:

> The Court: In all candor, any time you go to trial and lose, like in the state court system, you have things to appeal. On pleas like this, it's a completely different situation. But I do wish you the best of luck.
>
> Mr. Edwards: Thank you, sir.
>
> Defense Counsel: He did tell me, Judge, he wants to try to get counsel appointed to just appeal the ruling on the motion to suppress. So I told him that I would file the notice. And if the Court at some point needs to have a hearing as to whether he is in forma pauperis and is entitled to counsel for that appeal, I guess we'll have a hearing. But that's what he requested of me.

---

[5] Mr. Edwards received a sentence of 171.6 months' imprisonment for the state cocaine charge. *See* PSI ¶37.

The Court: Sure. On this case did we have a formal plea agreement? I can't remember now.

Defense Counsel: I don't remember - -

Government: No, I think he pled open, Your Honor.

Defense Counsel: Yeah. Yeah, I don't remember there being an appellate waiver. I don't recall.

The Court: Right. I just wanted to advise him if there was. So the plea agreement at docket entry 80 does not mention an appellate waiver. ***Certainly, sir, you do have the right, if you want, to take an appeal of that. Just don't miss your timelines on that. Okay?***

Mr. Edwards: All right. Thank you, sir.

(DE 106:23-24) (emphasis added*).*

## F.     The Notice of Appeal

Consistent with his representations during the sentencing hearing, defense counsel filed a notice of appeal on Mr. Edwards' behalf, indicating that Mr. Edwards was appealing "the denial of the Motion to Suppress on June 14, 2022 [DE 74]." (DE 93). Defense counsel also filed a motion to withdraw as counsel and for the appointment of counsel "to appeal the denial of the Motion to Suppress." (DE 94). On November 22, 2022, the magistrate judge granted the motion to withdraw, and appointed the

17

Federal Public Defender to represent Mr. Edwards. (DE 97). An amended notice of appeal from the judgment was then filed. (DE 100).

## Standards of Review

Issue I: The Court reviews *de novo* whether a voluntary, unconditional guilty plea waives the ability to appeal the rulings on a particular motion. *United States v. Patti,* 337 F.3d 1317, 1320 n.4 (11th Cir. 2003). Where a defendant alleges that his guilty plea was not knowing and voluntary, the Court's review is also *de novo. United States v. Pierre,* 120 F.3d 1153, 1156-1157 (11th Cir. 1997); *see also McCarthy v. United States,* 394 U.S. 459, 465-467 (1969) (an involuntary guilty plea violates due process and is void).

Issue II: This Court reviews *de novo* whether prior offenses meet the "different occasions" requirement in 18 U.S.C. § 924(e), the Armed Career Criminal Act, or "ACCA". *See United States v. Dudley,* 5 F.4th 1249, 1255 (11th Cir. 2021).

Issue III: The Court also reviews *de novo* constitutional ACCA sentencing issues. *United States v. Smith,* 775 F.3d 1262, 1265 (11th Cir. 2014).

Unpreserved ACCA errors are reviewed for plain error. *See United States v. Jones,* 743 F.3d 826, 829 (11th Cir. 2014). To establish plain error, an appellant must show: (1) error, (2) that is plain, and (3) that affects substantial rights. *See id.* Upon that showing, this Court should correct a plain error where (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Rosales-Mireles v. United States,* 138 S. Ct. 1897, 1906 (2018).

Issue IV:   This Court reviews the constitutionality of statutes *de novo. United States v. Scott*, 263 F.3d 1270, 1271 (11th Cir. 2001). Because Mr. Edwards did not raise the issue below, it is reviewed for plain error as well. *United States v. Longoria,* 874 F.3d 1278, 1283 (11th Cir. 2017).

## SUMMARY OF THE ARGUMENTS

<u>Issue I</u>:     Mr. Edwards' guilty plea was not entered into knowingly and voluntarily, where he believed that he retained the right to appeal the denial of his motion to suppress evidence. In his motion, Mr. Edwards argued that police lacked probable cause for his arrest on drug charges, and therefore, the gun seized upon his arrest must be suppressed. After a lengthy hearing, the district court denied the motion. Mr. Edwards then pled guilty.

Rule 11 imposes upon the district court an obligation to insure that a defendant understands the consequences of his guilty plea. One of those consequences is the waiver of the right to appeal a suppression issue unless properly preserved. Because there was no appellate waiver, Mr. Edwards, his attorney, and even the district court, erroneously believed that Mr. Edwards could appeal the court's finding denying his motion to suppress. However, Mr. Edwards did not enter a conditional plea, pursuant to Fed. R. Crim. P. 11(a)(2), which would have preserved that right. Because Mr. Edwards entered his guilty plea on the mistaken belief that he had preserved the right to appeal the denial of the motion, his plea was neither knowing nor voluntary. It must be vacated.

While generally, plain error review applies when a defendant raises the constitutionality of a guilty plea and a Rule 11 violation for the first time on appeal, here the district court was well aware of the error. In fact, it helped to create the error by failing to advise Mr. Edwards during the plea colloquy that he could not appeal the denial of his motion to suppress. Then, at sentencing, the district court informed Mr. Edwards that he "certainly" could appeal the denial of the motion. Moreover, the original notice of appeal indicated that Mr. Edwards intended to appeal the motion. The error here is preserved.

Issue II:    The indictment failed to allege, and the government failed to prove, that Mr. Edwards' prior convictions were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). First, the indictment did not list Mr. Edwards' convictions. While three convictions were listed in the factual proffer and in the PSI, there were no facts set forth such that the district court could make the different-occasions determination for the two 2010 convictions, and increase Mr. Edwards' sentence under ACCA.

Issue III: The imposition of a 15-year mandatory minimum sentence violates Mr. Edwards' Fifth and Sixth Amendment rights, as

whether the offenses were committed on different occasions depends on findings of fact that go beyond the mere "fact of a defendant's prior conviction." *Apprendi v. New Jersey,* 530 U.S. 460, 490 (2000). For that reason, the prior offenses should have been charged in the indictment, and a jury, not a judge, should have found that Mr. Edwards' prior offenses were committed on occasions different from one another. Mr. Edwards' sentence should be vacated, and he must be resentenced without the ACCA enhancement.

Issue IV:    Mr. Edwards' conviction for possession of a firearm by a convicted felon was unconstitutional because his intrastate possession of a firearm did not substantially affect interstate commerce. Such activity was therefore beyond Congress' authority to regulate under the Commerce Clause. While this Court has previously rejected this constitutional challenge under *United States v. Scott,* 263 F.3d 1270 (11th Cir. 2001) and *United States v. McAllister,* 77 F.3d 387 (11th Cir. 1996), Mr. Edwards preserves this issue for further review.

# ARGUMENTS AND CITATIONS OF AUTHORITY

## Issue I

**Mr. Edwards' guilty plea was not knowingly and voluntarily entered, where he believed that he retained the right to appeal the denial of his motion to suppress, the district court failed to advise him otherwise during the Rule 11 colloquy, and both defense counsel and the district court agreed at the sentencing hearing that he could appeal the ruling.**

### A. The guilty plea was neither knowing nor voluntary.

To be valid, a guilty plea must be made voluntarily and with full knowledge of the consequences. *Boykin v. Alabama,* 395 U.S. 238, 243-244 (1969). The fact that a defendant enters a plea of guilty and states that the plea is being entered freely and voluntarily does not preclude the defendant from subsequently challenging the voluntariness of the plea. *Blackledge v. Allison,* 431 U.S. 63, 74-75 (1977). In particular, where a defendant believes that his guilty plea preserves the right to appeal the denial of a motion, but for some reason, the appellate issue has not been preserved properly, then the plea has not been entered voluntarily and knowingly. *See United States v. Pierre*, 120 F.3d 1153, 1157 (11th Cir. 1997).

Rule 11 of the Federal Rules of Criminal Procedure provides a well-defined process for accepting guilty pleas. *See* Fed. R. Crim. P. 11. Included as part of the process is a requirement that the district court "must address the defendant personally in open court . . . [and] must inform the defendant of, and make sure the defendant understands," his trial rights and the rights he waives by pleading guilty. *See* Fed. R. Crim. P. 11(b)(1)(A)-(N). This includes an obligation to inform the defendant of the waiver of both his trial rights and his appellate rights. *See* Fed. R. Crim. P. 11(b)(1)(F), (b)(1)(N). These waivers must be made "knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *See Class v. United States,* 138 S. Ct. 798, 802 (2018) (quoting *United States v. Ruiz,* 536 U.S. 622, 629 (2002)).

In general, "Rule 11 imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary plea." *United States v. Hernandez-Fraire,* 208 F.3d 945, 949 (11th Cir. 2000). When accepting a guilty plea, a court must address three core concerns underlying Rule 11: "(1) the guilty plea must be free from coercion; (2) the defendant must understand

the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *See United States v. Jones,* 143 F.3d 1417, 1418-1419 (11th Cir. 1998). This Court has upheld plea colloquies that fail to address an item expressly required by Rule 11 "so long as the overall plea colloquy adequately addresses these three core concerns." *United States v. Monroe,* 353 F.3d 1346, 1354 (11th Cir. 2003).

An unconditional plea of guilty made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in the proceedings. *See Pierre,* 120 F.3d at 1155. A motion to suppress evidence is a non-jurisdictional defect, that is generally waived by the entry of a guilty plea. *United States v. McCoy,* 477 F.2d 550, 551 (5th Cir. 1973);[6] *see also United States v. Wai-Keung,* 115 F.3d 874, 877 (11th Cir. 1977) (declining to review suppression issue not properly preserved).

A defendant who wishes to preserve appellate review of a non-jurisdictional defect while at the same time pleading guilty, may do so by

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to September 30, 1981.

entering a "conditional plea" pursuant to Fed. R. Crim. P. 11(a)(2). Specifically, the rule provides that "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea." *See* Fed. R. Crim. P. 11(a)(2).

Here, Mr. Edwards thought he was preserving his right to appeal the denial of the motion to suppress. During the plea colloquy, the district court "recognize[d] that we had a motion in the case." (DE 105:8). Indeed, when the court asked defense counsel "how [he and Mr. Edwards] got ready for [the guilty plea]," defense counsel explained that they reviewed the plea agreement and the factual proffer. (DE 105:8). He then highlighted the motion to suppress:

> As the Court noted earlier, we also had a motion to suppress in this case. The facts are rather simple. I mean, he was pulled over and he was arrested and he was in possession of a firearm and he was a convicted felon. It's not a - - this is not factually difficult. It was just whether or not they had the requisite legal rights to effectuate that stop. That was the whole issue. And this Court, unfortunately, ruled against us, but that's the nature of the case.

(DE 105:8-9).

Then, the district court addressed Mr. Edwards, asking him whether "everything you wanted to have done on this case has been done." (DE 105:9). After Mr. Edwards responded "yes, sir," the district court stated:

> Because by pleading guilty at this stage what you're basically telling me is that you don't want to have a jury trial, that you want to resolve that part, and you want to go onto the sentencing part . . .

(DE 105:10). And, Mr. Edwards did want to "go onto the sentencing part," so that he could appeal the denial of his motion to suppress.

Next, the district court reviewed the trial rights Mr. Edwards was waiving by pleading guilty and the consequences of a guilty plea – the loss of the right to possess a firearm, to vote, to hold public office, to be a juror, and the forfeiture of the gun and the ammunition. (DE 105:10-14). At no point, however, did the district court inform Mr. Edwards that he would not be able to appeal the denial of the motion to suppress.

Importantly, at the sentencing hearing, the district court informed Mr. Edwards that he ***could***, in fact, appeal the denial of the motion to suppress. After the court advised Mr. Edwards that he had the right to appeal the sentence, the following colloquy ensued:

Defense Counsel: He did tell me, Judge, he wants to try to get counsel appointed to just appeal the ruling on the motion to suppress. So I told him that I would file the notice. And if the Court at some point needs to have a hearing as to whether he is in forma pauperis and is entitled to counsel for that appeal, I guess we'll have a hearing. But that's what he requested of me.

The Court: Sure. On this case did we have a formal plea agreement? I can't remember now.

Defense Counsel: I don't remember - -

Government: No, I think he pled open, Your Honor.

Defense Counsel: Yeah. Yeah, I don't remember there being an appellate waiver. I don't recall.

The Court: Right. I just wanted to advise him if there was. So the plea agreement at docket entry 80 does not mention an appellate waiver. ***Certainly, sir, you do have the right, if you want, to take an appeal of that. Just don't miss your timelines on that. Okay?***

Mr. Edwards: All right. Thank you, sir.

(DE 106:23-24) (emphasis added*).*

Moreover, the initial notice of appeal filed on Mr. Edwards' behalf stated that Mr. Edwards was appealing "the denial of the Motion to Suppress on June 14, 2022 [DE 74]." (DE 93). And in his motion to withdraw as counsel, defense counsel asked that appellate counsel be appointed "to appeal the denial of the Motion to Suppress." (DE 94).

This Court has held that a conditional plea must be in writing and must be consented to by the court and by the government. *Pierre,* 120 F.3d at 1155 (citing Fed. R. Crim. P. 11(a)(2)). While Mr. Edwards' plea was in writing, the plea did not contain the conditional plea language allowing Mr. Edwards the right to appeal the denial of his motion to suppress. Nor did the government consent to it being conditional, although it said nothing when defense counsel stated that Mr. Edwards intended to appeal the denial of the motion. In addition, the government said nothing when the district court told Mr. Edwards that he did "have the right, if you want, to take an appeal of that." (DE 106:24).

As in the instant case, the defendant in *Pierre* thought he was entering a plea that would allow him to appeal. Pierre wanted to appeal a speedy trial issue, and the district court assured him that he could do so. *See Pierre,* 120 F.3d at 1155. But, the government never gave "express approval for Pierre to plead conditionally," and "remained silent throughout these exchanges" between Pierre, his attorney, and the judge. *Id.* at 1155-1156.

In finding that the plea was unconditional because the government did not give its "express approval," this Court held that such a finding

did not preclude relief. Because Pierre entered his guilty plea on the "mistaken belief that [he] had preserved the speedy trial issues for appeal, his plea, was, as a matter of law, not knowing and voluntary." *Id.* at 1156. The guilty plea did not satisfy one of the core concerns of Rule 11 – that the defendant "must know and understand the consequences of his guilty plea," and as a result, was invalid. *Id.* at 1157.

Similarly, here, Mr. Edwards pled guilty, believing he could appeal the denial of his motion to suppress. While the discussion between Mr. Edwards, defense counsel, and the district court occurred during the sentencing hearing, it is clear that once he lost the motion to suppress, Mr. Edwards wanted to plead and "move onto the sentencing part" so that he could appeal the denial of his motion. (DE 105:10). At the sentencing hearing, defense counsel informed the court that Mr. Edwards wanted to have counsel appointed "to just appeal the ruling on the motion to suppress." (DE 106:24). And, in fact, the original notice of appeal focused on the suppression issue as well. (DE 74).[7]

---

[7] An amended notice of appeal was later filed by appellate counsel, appealing the final judgment and sentence entered on November 3, 2022. (DE 100).

Defense counsel's oral statement on the record at the sentencing hearing that it was Mr. Edwards' intention to preserve an issue for appeal did not "convert" Mr. Edwards' guilty plea into a conditional plea. *See United States v. Betancouth,* 554 F.3d 1329, 1331-1332 (11th Cir. 2009). However, it is further evidence that Mr. Edwards' plea was not knowing and voluntary because he did not understand the consequences of his unconditional guilty plea. *See Wofford v. Wainwright,* 748 F.2d 1505, 1508 (11th Cir. 1984) ("an accused who has not received reasonably effective assistance from counsel in deciding to plea guilty cannot be bound by his plea"). Mr. Edwards' misunderstanding, the district court's failure to advise him otherwise during the plea hearing, combined with the statements made at sentencing by both defense counsel and the district court, establish that Mr. Edwards "certainly" thought he could appeal the denial of his motion to suppress. For all of these reasons, Mr. Edwards' plea was not knowing or voluntary.

**B.**     **The error is preserved.**

At no point during the plea colloquy did the district court advise Mr. Edwards that the entry of a guilty plea would result in the waiver of his right to appeal the denial of his motion to suppress. Indeed, there was

a  discussion at the guilty plea hearing about the motion to suppress, and Mr. Edwards' intention to plead guilty and "go onto the sentencing part." (DE 105:8-10). Moreover, as evidenced by defense counsel's comments at the sentencing hearing, Mr. Edwards was clearly under the impression that he ***could*** appeal the denial of the motion because there had been no appeal waiver. Finally, ***the district court*** told him that he did "***have the right, if you want, to take an appeal of that***." (DE 106:23-24). And, his original notice of appeal indicated that was exactly what he thought he could do. (DE 74). As such, the error is preserved.

## C.    Alternatively, the error is plain.

Even should this Court determine that plain error review applies, Mr. Edwards has demonstrated error and that it was plain. This Court has held that plain error review applies when a defendant raises the constitutionality of a guilty plea and a Rule 11 violation for the first time on appeal. *United States v. Moriarty,* 429 F.3d 1012, 1018-1019 (11th Cir. 2005). In such case, the defendant must show that: (1) an error occurred; (2) the error was plain; and (3) the error affects substantial rights. *See Monroe,* 353 F.3d at 1349. If the first three prongs of plain error are met,

then this Court may correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

The district court's failure to inform Mr. Edwards during the plea colloquy that his guilty plea waived his ability to appeal the motion to suppress was plain error. *See Hernandez-Fraire,* 208 F.3d at 950-951 (the district court did not adequately address the third "core concern" of Rule 11 – that the defendant must know and adequately understand the consequences of his guilty plea). In the Rule 11 context, the "reviewing court may consult the whole record when considering the effect of any error on substantial rights." *See Monroe,* 353 F.3d at 1350 (quoting *United States v. Vonn,* 535 U.S. 55, 59 (2002)).

During the plea colloquy, the district court referenced "the motion." (DE 105:8). When the district court asked defense counsel how he and Mr. Edwards "got ready" for the guilty plea, defense counsel discussed the motion to suppress. (DE 105:8-9). Then, the district court addressed Mr. Edwards, explaining that "by pleading guilty, you're basically telling me that you don't want to have a jury trial, that you want to resolve that part and you want to go onto the sentencing part." (DE 108:10). Certainly, the fact that the parties spent so much time discussing the motion should

have put the court on notice that it needed to explain to Mr. Edwards that one of the consequences of the entry of his guilty plea would be that he would ***not*** be able to appeal the denial of the motion to suppress. But the court did not do so.

The sentencing hearing expressly demonstrated how the error affected Mr. Edwards' substantial rights as both defense counsel and the court agreed that Mr. Edwards "certainly" had the right to appeal the denial of the motion. (DE 106:24). Furthermore, Mr. Edwards indicated his intention to appeal *only* the denial of the motion in his original notice of appeal. (DE 93).

In *United States v. Dominguez Benitez,* 542 U.S. 74 (2004), the Supreme Court held that a defendant seeking reversal of his conviction on the basis that the district court committed plain error under Rule 11 in accepting his guilty plea, must show a "reasonable probability that, but for the error, he would not have entered the plea." *Id.* at 83. Mr. Edwards faced a mandatory minimum 180-month sentence on a guilty plea, even though his advisory guidelines range was 168 to 210 months' imprisonment. (PSI ¶84). Mr. Edwards went to trial in the underlying state case and received a concurrent sentence of 171.6 months'

imprisonment. (PSI ¶37; DE 106:17). That case is currently on appeal. (DE 106:18). Had Mr. Edwards known that he could not appeal the denial of his motion to suppress, he likely would have proceeded to trial in the instant case as well.

Finally, the misinformation provided to Mr. Edwards by his defense counsel, but more importantly, by the district court, "seriously affected the fairness, integrity, or public reputation of judicial proceedings" such that this Court must exercise its discretion to review the error. *Monroe,* 353 F.3d at 1349. *See also Dominguez Benitez,* 542 U.S. at 83 (the probability of a different result is "sufficient to undermine confidence in the outcome" of the proceeding). Mr. Edwards' plea must be set aside and his conviction vacated.

## Issue II

**The district court erred in imposing a 15-year mandatory minimum term of imprisonment for Mr. Edwards' conviction for possession of a firearm by a convicted felon, where the indictment failed to allege, and the government failed to prove, that Mr. Edwards had three qualifying convictions for a violent felony or a serious drug offense, committed on occasions different from one another, pursuant to 18 U.S.C. § 924(e)(1).**

Title 18 U.S.C. § 924(e)(1), the Armed Career Criminal Act or "ACCA," provides that any person who violates 18 U.S.C. § 922(g), and has three prior convictions for a violent felony[8] or a serious drug offense,[9] or both, "committed on occasions different from one another," is subject to a mandatory minimum sentence of 15 years' imprisonment. *See* 18 U.S.C. § 924(e)(1). The government bears the burden of proving that a

---

[8] The term "violent felony" means a crime punishable by a term exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

[9] A "serious drug offense" is an offense under state law "involving manufacturing, distributing, or possessing with intent to distribute a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

sentencing enhancement under the ACCA is warranted. *United States v.,* 941 F.3d 1048, 1051 (11th Cir. 2019). It is the duty of the district court to insure that the government carries its burden of proof. *United States v. Hernandez,* 145 F.3d 1433, 1440 (11th Cir. 1998).

As applicable here, the government must prove by a preponderance of the evidence, using "reliable and specific evidence," that a defendant's prior convictions each "arose out of a separate and distinct criminal episode." *See United States v. McCloud,* 818 F.3d 591, 595 (11th Cir. 2016); *United States v. Sneed,* 600 F.3d 1326, 1329 (11th Cir. 2010). Here, the government failed to establish that Mr. Edwards' prior offenses were "committed on occasions different from one another," and the district court erred in concluding otherwise.

### A. The "facts" produced by the government do not support the ACCA "different occasions" finding.

The indictment in the instant case charged Mr. Edwards with possessing a firearm and ammunition, after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). He was sentenced to a mandatory minimum term of 15 years' imprisonment, however, based on the allegation that he had three qualifying prior convictions that were

"committed on occasions different from one another," pursuant to 18 U.S.C. § 924(e). The alleged prior convictions were not listed in the indictment, nor did the indictment allege that the prior offenses were committed on occasions different from one another. (DE 1).

In the factual proffer, Mr. Edwards agreed that he had prior felony convictions for trafficking in oxycodone, aggravated battery with a deadly weapon, and robbery with a deadly weapon/aggravated battery. (DE 81:2). There were no other facts set forth in the proffer concerning the convictions. The PSI classified Mr. Edwards as an armed career criminal based on those same three convictions. (PSI ¶¶9, 20, 26, 34, 35).[10] The "circumstances" were provided for the 1997 robbery and the 2010 aggravated battery convictions. (PSI ¶¶26, 35). But, the PSI provided no "circumstances" for the 2010 drug conviction listed in PSI ¶34.

As this Court held in *United States v. Dudley,* 5 F.4th 1249, 1256 (11th Cir. 2021), the determination of whether a defendant qualifies for an armed career criminal sentencing enhancement involves a two-prong inquiry: (1) whether the defendant has three prior convictions for either

---

[10] PSI ¶34 also lists a second drug-related conviction: possession with intent to distribute cocaine.

a violent felony or a serious drug offense, and (2) whether those predicate offenses were committed on different occasions. According to the Court, "at least for purposes of the first step in the ACCA inquiry – whether a prior offense qualifies as a violent felony [or serious drug offense] – the law is crystal clear that facts simply do not matter . . ." *Id.* at 1259.

It is the second step of the ACCA inquiry – whether the predicate felonies were committed on occasions different from one another – that was at issue in *Dudley,* and in the instant case. After recognizing that "the Supreme Court ha[d] never squarely addressed the different-occasions inquiry," this Court held that in making that determination, the district court is "require[d] to look at the facts underlying the prior conviction." *Dudley, Id.* at 1259. During that inquiry, the district court is limited to facts contained in "*Shepard* documents"[11] – the charging document, terms of the plea agreement or plea colloquy transcript, and undisputed portions of the PSI. *McCloud,* 818 F.3d at 596. It is "only information found in such conclusive judicial records [that] has gone through a validation process that comports with the Sixth Amendment." *Dudley*, 5 F.4th at 1259 (citing *Sneed,* 600 F.3d at 1332-1333).

---

[11] *Shepard v. United States,* 544 U.S. 13, 16 (2005).

A court may rely on "non-elemental facts" contained in any of these *Shepard*-approved sources. *See United States v. Longoria,* 874 F.3d 1278, 1282-1283 (11th Cir. 2017). However, the court may not use police reports to determine whether predicate offenses under § 924(e)(1) were committed on "occasions different from one another." *Sneed,* 600 F.3d at 1333 (vacating ACCA different-occasions finding based on police reports and no other *Shepard*-approved material).

Here, there were insufficient facts set forth in the "*Shepard* documents" to establish that Mr. Edwards' convictions were "committed on occasions different from one another." The factual proffer listed the three convictions: "trafficking in oxycodone (10-022573CF10A), aggravated battery with a deadly weapon (10-022679CF10A), and robbery with a deadly weapon/aggravated battery (97-000465CF10B)." (DE 81). There were no charging documents, no plea agreements, and no transcripts of the plea colloquies. Even the undisputed portions of the PSI did not establish that all three offenses were committed on different occasions. *See McCloud,* 818 F.3d at 595 ("the district court may make findings of fact based on undisputed statements in the PSI").

While, arguably, the district court could have concluded that there was *a* 1997 conviction and *a* 2010 conviction, there were no facts from any source showing that the two 2010 convictions were committed on occasions different from one another. With respect to the 2010 aggravated battery with a deadly weapon conviction set forth in PSI ¶35, "according to the arrest affidavit, on October 1, 2010," Mr. Edwards hit his girlfriend with a flowerpot and "was later arrested on December 30, 2010." No "circumstances for the arrest" underlying the 2010 trafficking in oxycodone conviction were provided in PSI ¶34, although an arrest date of December 28, 2010 was listed.

Because there were insufficient facts to establish when the 2010 drug trafficking offense occurred, the government failed to prove that Mr. Edwards' prior convictions were committed on different occasions. The government did not meet its burden of proving that the ACCA enhancement was warranted, and as a result, the district court erred in imposing a 15-year mandatory minimum sentence.

**B.** **The district court's "different-occasions" inquiry was erroneous under _Wooden v. United States._**

In _Wooden v. United States_, 142 S. Ct. 1063 (2022), the Supreme Court interpreted ACCA's occasions clause for the first time, expressly rejecting this Court's interpretation that the clause is satisfied "whenever crimes take place at different moments in time – that is, sequentially rather than simultaneously." _Id._ at 1068 n.1 (citing _United States v. Carter,_ 969 F.3d 1239, 1243 (11th Cir. 2020)). Such a reading, the Supreme Court held, conflicts with the "ordinary meaning" of the term "occasion," which refers to "an event, occurrence, happening, or episode," and "may itself encompass multiple, temporally distinct activities." _See Wooden,_ 142 S. Ct. at 1069. An "occasion" may consist of "a number of non-simultaneous events," that through "their connections," compose one occasion. _Id._ at 1070-1071.

The different-occasions clause thus requires an inquiry that is "more multi-factored in nature" than that conducted by the district court in the instant case. _Id._ at 1070. Indeed, "a range of circumstances may be relevant to identifying episodes of criminal activity." _Id._ at 1071. These circumstances include a consideration of the timing, location, character, and relationship of the offenses. _Id._ at 1071.

Such a "straightforward and intuitive" inquiry did not take place in the instant case. *See Id.* at 1071. In fact, no inquiry took place at all. Still, the district court found that Mr. Edwards' prior convictions qualified him as an armed career criminal. Because the district court did not have the benefit of *Wooden,* it applied an erroneous standard when finding that Mr. Wooden's prior convictions occurred on different occasions.

### C.   The error is plain.

The government's failure to prove that Mr. Edwards' convictions occurred on different occasions amounts to plain error. Because Mr. Edwards did not raise this issue in the district court, he must not only establish that his challenge to the ACCA enhancement is correct as a matter of law, he must also satisfy the plain error standard. And, he has done so.

To establish plain error, Mr. Edwards must show (1) error, (2) that is plain, and (3) that affects substantial rights. *United States v. Jones,* 743 F.3d 826, 829 (11th Cir. 2014). Upon that showing, this Court should correct a plain error where (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Rosales-Mireles v. United States,* 138 S. Ct. 1897, 1906 (2018).

It was error for the district court to conclude that Mr. Edwards'
three convictions occurred on occasions different from one another. While
there were facts establishing that Mr. Edwards had three prior
convictions for either a violent felony or a serious drug offense, there were
no facts produced by the government that all three offenses occurred on
different occasions. In the factual proffer, Mr. Edwards admitted to a
1997 conviction for robbery with a deadly weapon/aggravated battery and
two 2010 convictions: one for trafficking in oxycodone and the other for
aggravated battery with a deadly weapon. He did not admit that the 2010
offenses occurred on different dates.

The government introduced no charging documents, plea
agreements, or plea transcripts. The PSI listed the two 2010 convictions
in different paragraphs, but provided no reliable facts as to when the
offenses occurred. No facts at all were provided for the drug offense in
PSI ¶34, only an arrest date of December 28, 2010. According to PSI ¶35,
Mr. Edwards was arrested on December 30, 2010 for the aggravated
battery that had occurred months earlier. The facts set forth for that
offense were taken from "the arrest affidavit."

Even assuming that a defendant's failure to object to allegations of facts in a PSI admits those facts for sentencing purposes, *United States v. Lopez-Garcia,* 565 F.3d 1306, 1323 (11th Cir. 2009), there were *no* facts set forth in PSI ¶34 to object to. And the only facts set forth in PSI ¶35 were taken from an arrest report. As this Court has held, a sentencing court may not use police reports to establish that offenses were committed on "occasions different from one another." *See Sneed,* 600 F.3d at 1333 (only *Shepard*-approved sources can be used to determine if prior offenses were committed on different occasions for purposes of the § 924(e)(1) enhancement; "excluded sources" are police reports).

The error is plain because it was the government's burden to prove by a preponderance of the evidence at the sentencing hearing that the ACCA enhancement was applicable, and it failed to do so. *See Harris,* 941 F.3d at 1051. Even though Mr. Edwards failed to object, here there were no facts in the record from which the district court could satisfy the required "separate occasions" inquiry in light of *Wooden*. Moreover, the plain error standard "has broader purposes, including in part allowing courts of appeal to better identify those instances in which the application of a new rule of law to cases on appeal will meet the demands

of fairness and judicial integrity." *Henderson v. United States,* 568 U.S. 266, 278 (2013). In light of the new "different-occasions" test set forth in *Wooden,* the government failed to carry its burden to establish an enhanced sentence.

The third and fourth prongs of the plain-error standard ask whether the error affected Mr. Edwards' substantial rights, and whether the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings in the case. *United States v. Olano,* 507 U.S. 725, 732 (1993). Here, Mr. Edwards can show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States,* 578 U.S. 189, 194 (2016). And, indeed, because of the ACCA enhancement, "the district court mistakenly deemed applicable an incorrect, higher [Sentencing] Guidelines range." *Id.* at 200. According to PSI ¶84, Mr. Edwards' advisory guidelines range was 168 to 210 months, but because of the ACCA enhancement, he was sentenced to 180 months. Under *Molina-Martinez,* that difference is sufficient.

Allowing Mr. Edwards' 180 month (15 year) sentence to stand when the government failed to meet its burden to show that the enhanced

sentence is warranted seriously affects the fairness, integrity, and public reputation of the proceedings. *Rosales-Mireles v. United States,* 138 S. Ct. at 1907-1908 (explaining that "[t]he risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings"). As the Court noted, "what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" *Id.* at 1908. Mr. Edwards' sentence must be vacated.

## Issue III

**Mr. Edwards' ACCA sentence violates both his Fifth and Sixth Amendments rights, because the occasions clause of 18 U.S.C. § 924(e)(1) necessitates an examination of the facts surrounding the prior predicate offense, not just "the fact of a prior conviction," requiring that the offenses be charged in the indictment, and that a jury, not a judge, determine the offenses occurred on separate occasions.**

Mr. Edwards' 15-year ACCA sentence also violates his Fifth and Sixth Amendment rights. First, the indictment did not list Mr. Edwards' three ACCA-predicate convictions. It did not allege whether they were serious drug offenses or violent felonies. Finally, the indictment did not state that the offenses were "committed on occasions different from one

another." Nor were the "different occasions" admitted by Mr. Edwards or proven to a jury beyond a reasonable doubt.

As the Supreme Court has held, any fact that increases the statutory mandatory minimum sentence or maximum penalty is an "element" that must be charged in an indictment and proven to a jury beyond a reasonable doubt.[12] *See Alleyne v. United States,* 570 U.S. 99, 103 (2013); *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000); *Jones v. United States,* 526 U.S. 227, 243 n.6 (1999). There is only one exception: a judge may determine at sentencing the "fact of a prior conviction." *See United States v. Haymond,* 139 S. Ct. 2369, 2377 n.3 (plurality) (citing *Almendarez-Torres v. United States,* 523 U.S. 224, 230 (1988)); *Apprendi,* 530 U.S. at 490; *Alleyne,* 570 U.S. at 103.

Mr. Edwards preserves his objection to this exception. *See, e.g., Sessions v. Dimaya,* 138 S. Ct. 1204, 1253-1254 (2018) (Thomas, J., dissenting) ("The exception recognized in *Almendarez-Torres* for prior

---

[12] As applicable to Mr. Edwards' felon-in-possession conviction, the ACCA increases the maximum penalty for a violation of 18 U.S.C. § 922(g)(1) from 10 years to life and imposes a mandatory minimum term of imprisonment of 15 years. *See* 18 U.S.C. §§ 924(a)(2), 924(e)(1). Since Mr. Edwards' conviction, the maximum penalty for a violation of 18 U.S.C. § 922(g)(1) increased to 15 years. *See* 18 U.S.C. § 924(a)(8), effective June 25, 2022.

convictions is an aberration, has been seriously undermined by subsequent precedents, and should be reconsidered…"); *Apprendi,* 530 U.S. at 489-490 ("it is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested").

Clearly, the ACCA's application depends on facts that go beyond the mere "fact of a prior conviction." In *Descamps v. United States,* 570 U.S. 254, 269-270 (2013), and *Mathis v. United States,* 579 U.S. 500, 511 (2016), the Supreme Court specifically limited sentencing courts to the elements of the prior offenses to avoid the Sixth Amendment violation that would occur if the court relied upon its own judicial fact-finding to increase a defendant's statutory penalties. But, in *Dudley,* this Court concluded that because *Descamps* and *Mathis* addressed the ACCA's violent-felony provision, they "have no bearing on" the ACCA's different-occasions provision. *Dudley,* 5 F.4th at 1264-1265. And, because the Supreme Court had not yet "squarely addressed the different-occasions inquiry," this Court found no error in a judicial determination that the offenses occurred on different occasions. *Id.* at 1259-1260.

The Supreme Court has now addressed the "different-occasions" clause in *Wooden,* and held that it requires a "multi-factored" inquiry. *Wooden,* 142 S. Ct. at 1070. This new standard goes beyond the "simple fact of a defendant's prior conviction." *Mathis,* 579 U.S. at 511. It requires consideration of the factual circumstances surrounding a defendant's prior offenses. As such, both the Fifth and Sixth Amendments require an indictment to charge, and a jury to find, or a defendant to admit, that he committed his prior offenses on different occasions.

*Wooden* did not determine "whether the Sixth Amendment requires that a jury, rather than a judge, resolve whether prior crimes occurred on a single occasion "because Wooden did not raise it," *Wooden,* 142 S. Ct. at 1068 n.3. However, during oral argument, members of the Supreme Court questioned whether the proposed statutory interpretations of ACCA's different-occasions provision presents Sixth Amendment issues. *See* Oral Argument tr. at 15-16, 31-32, 39, 72, *Wooden v. United States,* No. 20-5279 ("*Wooden* OA tr.").

And, even before the *Wooden* decision, a member of this Court explained that *Dudley* "may illustrate cracks in our different-occasions

precedent – in particular, whether our different-occasions caselaw can be squared with our (and the Supreme Court's) ACCA predicate-felony decisions and the Sixth Amendment precedents that undergrid them." *See Dudley,* 5 F.4th at 1273 (Newsom, J., concurring in part and dissenting in part).

Before *Wooden,* this Court found "unavailing" a defendant's claim that his Fifth and Sixth Amendment rights were violated by a judicial determination that his convictions occurred on different occasions or that the offenses were not charged in the indictment. *See Longoria,* 874 F.3d at 1283 (holding that the district court was permitted to determine the factual nature of convictions including whether they were committed on separate occasions); *see also United States v. Smith,* 775 F.3d 1262, 1266 (11th Cir. 2014) (holding that the Constitution does not require the government to allege in the indictment or to prove beyond a reasonable doubt that the defendant had three ACCA predicate convictions).

However, whether the Fifth and Sixth Amendments require the government to charge in the indictment, and a jury to find or a defendant to admit that his offenses occurred on separate occasions, is an open question post-*Wooden.* Indeed, while denying a defendant's "belated

constitutional challenge" after *Wooden,* this Court acknowledged that it had not yet had a chance to confront whether the Fifth and Sixth Amendments apply to the different-occasions determination in light of *Wooden*'s new "multi-factored inquiry." *See United States v. Penn,* 63 F.4th 1305, 1318 (11th Cir. 2023) (finding drug offenses occurred on separate occasions under *Wooden*; not addressing constitutional claims). Because Penn could not establish plain error, "the merits of [his] underlying argument" were not addressed, and remain an open question in this circuit. *Id.*

No precedent forecloses Mr. Edwards' Sixth Amendment argument. There is no authority from the Supreme Court directly addressing the Sixth Amendment claim "because Wooden did not raise it." *Wooden,* 142 S. Ct. at 1068, n.3.

With respect to Mr. Edwards' Fifth Amendment claim, in *United States v. Cotton,* 535 U.S. 625, 631 (2002), the Supreme Court held that an indictment clause error is subject to plain error review. The respondents in *Cotton* established plain error under *Apprendi* because the indictment failed to allege a fact –the drug quantity – that increased the statutory maximum sentence. However, "even assuming respondents'

substantial rights were affected," because the evidence that the conspiracy involved at least 50 grams of cocaine base was "overwhelming and essentially uncontroverted," the error did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 632-633.

Here, however, the evidence was not "overwhelming." Even the unobjected-to facts in the PSI did not establish that the 2010 convictions were committed on different occasions. One 2010 conviction listed no circumstances, not even the date the offense occurred. And the other 2010 conviction listed facts taken from police reports, which are not "*Shepard*-approved" documents. There was no "uncontroverted" evidence curing the indictment clause error.

After *Wooden,* it is clear that Mr. Edwards' ACCA sentence violates both the Fifth and Sixth Amendments. For that reason, Mr. Edwards preserves his Fifth and Sixth Amendment arguments for further review.

**The felon-in-possession statute, 18 U.S.C. § 922(g), both on its face and as applied, is an invalid exercise of Congress' Commerce Clause power because possession of a firearm by a convicted felon is not conduct which has a substantial effect on interstate commerce.**

The Commerce Clause of the United States Constitution states in pertinent part that "[t]he Congress shall have the power . . . [t]o regulate Commerce with foreign Nations, and among the several states." *See* U. S. CONST. art. 1, § 8. In *United States v. Lopez,* 514 U.S. 549 (1995), the Supreme Court identified the three categories of activity that Congress may regulate: (1) the use of channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons and things in interstate commerce; and (3) "those activities having a substantial relationship to interstate commerce, . . . *i.e.,* those activities that substantially affect interstate commerce." *Id.* at 558-559.

With respect to the third category, the Court acknowledged that its caselaw "has not been clear whether an activity must 'affect' or 'substantially affect' interstate commerce in order to be within Congress' power to regulate it under the Commerce Clause." *Id.* at 559. The Court

concluded that the proper analysis is whether the targeted activity **substantially** affects interstate commerce. *Id.* (emphasis added).

In *Lopez,* the Court invalidated the Gun-Free School Zones Act, which prohibited "any individual knowingly to possess a firearm at a place that [he] knows . . . is a school zone." *See* 18 U.S.C. § 922(q). The Court found that § 922(q) was "a criminal statute that by its terms has nothing to do with 'commerce' or any sort of criminal enterprise, however broadly one might define those terms." *Lopez,* 514 U.S. at 561.

In so ruling, the Court rejected the government's argument that "the presence of guns in schools poses a substantial threat to the educational process by threatening the learning environment," which would result in a "less productive citizenry" and "have an adverse effect on the Nation's economic well-being." *Id.* at 564. The government conceded that such reasoning would allow Congress to "regulate not only all violent crime, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce." *Id.* Following such reasoning, the Court found it "difficult to perceive any limitation on federal power, even in areas such as criminal law enforcement or education where States historically have been sovereign."

*Id.* To accept the government's arguments would "convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States"; "require [the Court] to conclude that the Constitution's enumeration of powers does not presuppose something not enumerated"; and accept "that there will never be a distinction between what is truly national and what is truly local." *Id.* at 567-568 (citations omitted). "This" the Court was "unwilling to do." *Id.* at 568.

Shortly after *Lopez* was decided, this Court determined that the felon-in-possession statute, 18 U.S.C. § 922(g), did not exceed Congress' authority under the Commerce Clause because the statute expressly made it unlawful for a felon "to possess **'in or affecting commerce'** any firearm or ammunition." *United States v. McAllister,* 77 F.3d 387, 389-390 (11th Cir. 1996) (emphasis added). The Court held that the presence of this jurisdictional element "defeat[ed] McAllister's facial challenge to the constitutionality of § 922(g)(1)." *Id.* at 390. The Court reasoned that while § 922(q) was an attempt to prohibit possession of a gun within a school zone, § 922(g) is an attempt to regulate guns that have a connection to interstate commerce. *Id.*

McAllister also argued that § 922(g)(1) was unconstitutional as applied because the government failed to prove how his purely intrastate possession affected interstate commerce. *McAllister,* 77 F.3d at 390. Rejecting that challenge as well, this Court held that proof that a firearm had previously travelled in interstate commerce was sufficient to satisfy the "minimal nexus" requirement the Supreme Court established in *Scarborough v. United States,* 431 U.S. 563, 577 (1977), and "[n]othing in *Lopez* suggests that the 'minimal nexus' test should be changed." *McAllister,* 77 F.3d at 390.

Then, in *United States v. Scott,* 263 F.3d 1270, 1271 (11th Cir. 2001), the appellant argued that *McAllister's* holding had been abrogated by two Supreme Court decisions finding that Congress had exceeded its authority under the Commerce Clause. *See United States v. Morrison,* 529 U.S. 598, 617-618 (2000) (invalidating the part of the Violence Against Women Act that prohibited intrastate gender-related violence, reaffirming that "[t]he Constitution requires a distinction between what is truly national and what is truly local," and that the regulation of violent crime "has always been the province of the States"); *Jones v. United States,* 529 U.S. 848, 855, 858 (2000) (vacating Jones' federal

arson conviction, holding that a private dwelling not used for any commercial purpose did not fall within the ambit of the federal arson statute, 18 U.S.C. § 844(i), and expressing concern about "traditionally local criminal conduct" being considered "a matter for federal enforcement").

In again upholding the constitutionality of § 922(g)(1), the Court in *Scott* stated that "nothing in *Morrison* or *Jones* alters the reasoning upon which *McAllister* is moored." *Scott*, 263 F.3d at 1273. That "reasoning" was the jurisdictional element of § 922(g) – "the requirement that the felon 'possess in or affecting commerce,' any firearm or ammunition." *Id.*

This Court's holdings in *McAllister* and *Scott* cannot be squared with the holdings of *Lopez, Morrison,* and *Jones*. The Supreme Court has clearly held that Congress may not regulate non-economic, intrastate criminal activity unless that activity "substantially affects" interstate commerce. A statutory element requiring a "minimal nexus" to commerce is insufficient to overcome these constitutional concerns.

For purposes of further review, Mr. Edwards maintains that § 922(g) is unconstitutional, and this Court's precedents holding otherwise should be overruled.

# CONCLUSION

The Court should vacate Mr. Edwards' conviction and sentence, and remand his case to the district court for further proceedings.

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

*s/Lori Barrist*
Lori Barrist
Assistant Federal Public Defender
250 S. Australian Ave.
Suite 400
West Palm Beach, FL 33401
Telephone No. (561) 833-6288

# CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation and typeface requirements of Fed. R. App. P. 32(a)(7)(B), because it contains 11,597 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Century Schoolbook font.

*s/Lori Barrist*
Lori Barrist
Attorney for Edwards
Dated: July 10, 2023

**CERTIFICATE OF SERVICE**

I HEREBY certify that on this 10th day of July 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and sent four copies to the Clerk of the Court via third party commercial carrier for delivery within three days. I also certify that the foregoing document is being served this day via CM/ECF on Daniel Matzkin, Chief, Appellate Division, United States Attorney's Office, 99 N.E. 4th Street, Miami, Florida 33132.

*s/Lori Barrist*
Lori Barrist
